# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**C. ROBERT RITTMAN**
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DONTAE M. CLARK, ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No. 27A04-1306-CR-269 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-1201-FD-8

**March 31, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Respondent Dontae Clark appeals from his conviction for Class D felony marijuana possession. Police officers working in an area known as a hotbed of illegal drug activity observed a known drug dealer walk up to a stopped vehicle and speak with someone in the passenger's seat. When police followed the vehicle to a convenience store, they observed Clark exit the vehicle from the passenger side and enter the store. One of the officers followed Clark inside and observed him purchase a package of K-2 spice. Clark returned to the vehicle, and the vehicle returned to where it had been previously. The officers followed, but, before a traffic stop could occur, they saw Clark running up the middle of the street in their direction. The officers told Clark to stop and one of them frisked him for weapons. During the pat-down, the other officer noticed a bag of marijuana in an inside pocket of Clark's coat. At that point, Clark fled but was quickly apprehended. Clark argues that the admission of the marijuana at his trial constituted fundamental error and that the trial court abused its discretion in admitting certain opinion testimony given by the police officers. Finding no merit in Clark's arguments, we affirm.

**FACTS AND PROCEDURAL HISTORY**

At approximately 11:30 p.m. on January 18, 2012, Grant County Sheriff's Detective Todd Fleece and Marion Police Detective Shawn Sizemore, members of a drug task force, were patrolling near the 3600 block of South Washington in Marion, a "known drug area[.]" Tr. p. 97. Detective Fleece noticed Marvin Clark, a "person known to

2

[police] as somebody who participates in the sale and distribution of illegal narcotics[,]" standing at the passenger side of a vehicle and speaking to the passenger. Tr. p. 97. The detectives drove around the block and returned in time to see the vehicle leaving the area. The detectives followed the vehicle to a convenience store at 38th and Western, where they observed Clark exit the passenger's side and enter the store. Detective Sizemore followed Clark into the store and saw him purchase a package of "synthetic marijuana or K-2 spice." Tr. p. 98.

Clark returned to the vehicle, which proceeded back to the area it had been previously. The detectives called for a marked police car that could perform a traffic stop and followed, only to observe the vehicle again stopped in the 3600 block and Clark running down the middle of the street in their direction. Detective Fleece positioned his vehicle in Clark's way, displayed his badge, and identified himself as a police officer. When told to stop, Clark complied.

Detective Fleece began an outer-clothing pat-down on Clark with Detective Sizemore standing nearby. The headlights of Detective Fleece's vehicle were pointing in the general direction of the pat-down and Detective Sizemore was using his flashlight. As Detective Fleece was conducting his pat-down, Detective Sizemore observed a "clear plastic baggy containing a greenish, brown leafy substance [he] kn[e]w to be marijuana" protruding from an inside pocket of Clark's jacket. Tr. p. 105. According to Detective Sizemore,

3

The flap of the coat was laid open. That's not a result of Detective Fleece's pat down. Detective Fleece started to commence his outter [sic] clothing pat down for officer's safety. As he did that, I come around to the front part of the Defendant and when I did that I observed that the flap was open on the jacket and observed the bag of weed in his pocket in plain view.

Tr. p. 37-38. When Detective Sizemore said, "he's got weed[,]" Clark "pushed off of Detective Fleece and started to run towards the northeast[.]" Tr. p. 107. The detectives gave chase and eventually apprehended Clark. Detective Sizemore identified the substance in the bag as marijuana. The substance, however, was not analyzed chemically, apparently because the sample was not large enough to submit for testing pursuant to Indiana State Police policy.

On January 20, 2012, the State charged Clark with Class D felony marijuana possession and Class A misdemeanor resisting law enforcement. On December 27, 2012, Clark filed a motion to suppress the evidence found on his person. On March 11, 2013, the trial court denied Clark's motion to suppress. On April 8, 2013, at the conclusion of a bifurcated jury trial, a jury found Clark guilty of Class D felony marijuana possession and not guilty of resisting law enforcement. On May 3, 2013, the trial court sentenced Clark to three years of incarceration.

**DISCUSSION AND DECISION**

**I. Whether the Trial Court Committed Fundamental Error When
it Admitted the Marijuana Seized from Clark's Person**

Clark contends that the trial court erroneously admitted the marijuana seized from him. Clark, however, as he acknowledges, did not object when the exhibit was admitted.

Generally, an issue is waived for appeal if it is not objected to at trial. *Tillberry v. State*, 895 N.E.2d 411, 415 n.1 (Ind. Ct. App. 2008). However, if the court made a "fundamental error," meaning an error "so prejudicial to the rights of a defendant that a fair trial is rendered impossible," then the lack of objection does not waive the right on appeal. *Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010). The fundamental error rule "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* Fundamental error requires that the Respondent show greater prejudice than ordinary reversible error. *Id.*

The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

*Fourth Amendment*

5

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961))] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

Although Clark does not challenge his initial detention by the detectives, he argues that the marijuana discovered in his coat pocket was nonetheless improperly admitted because Detective Fleece's pat-down was unconstitutional. "[I]t is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)), *trans. denied*. Moreover,

> [a]fter making a *Terry* stop, if an officer has a reasonable fear of danger, he may perform a carefully limited patdown of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault

6

> the officer. The *Terry* patdown should be confined to its protective purpose. If the facts known by the officer at the time of the stop are such that a man of reasonable caution would believe that the action taken was appropriate, the Fourth Amendment is satisfied.

*Parker v. State*, 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998) (citations omitted), *trans. denied*.

Clark argues that the allegedly illegal pat-down led to the discovery of the marijuana, rendering it inadmissible. "The 'fruit of the poisonous tree' doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures." *Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000). Even if we assume that the pat-down for weapons was unconstitutional, we conclude that Clark has failed to show error, much less fundamental error. Detective Sizemore testified unequivocally that the exposure of the contraband in Clark's pocket was not a result of Detective Fleece's pat-down, and it is well-settled that "the 'fruit of the poisonous tree' doctrine has no application when the derivative evidence has an 'independent source[.]'" *Id.* (quoting *Silverthorne Lumber Co. v. U.S.*, 251 U.S. 385, 392 (1920)). Put another way, the seizure of the marijuana was not a result of any illegal search and so was not the fruit of any poisonous tree. Indeed, it is apparent that the marijuana was, in fact, seized pursuant to the so-called "open view" doctrine. When a police officer views contraband prior to an intrusion into a constitutionally protected area, no "search" in the constitutional sense has occurred. *Sayre v. State*, 471 N.E.2d 708, 712, (Ind. Ct. App. 1984), *trans. denied*. "[A]n officer

7

must have probable cause to believe that the property to be seized is connected to criminal activity." *Cochran v. State*, 429 N.E.2d 672, 674 (Ind. Ct. App. 1981). Detective Sizemore was not in constitutionally-protected space when he saw the bag in Clark's pocket, and, according to his testimony, he immediately recognized that it contained illegal marijuana. Clark has failed to establish fundamental error in this regard.

## II. Whether the Trial Court Abused its Discretion in Admitting Certain Testimony

As previously mentioned, the admissibility of evidence is within the sound discretion of the trial court, and we will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Curley*, 777 N.E.2d at 60. Clark contends that both Detective Fleece's and Detective Sizemore's identification of the substance seized from his pocket as marijuana was inadmissible opinion testimony due to a lack of sufficient foundation. At the time of Clark's trial, Indiana Evidence Rule 702(a) provided,[1] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." "The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of

---

[1] Effective January 1, 2014, Rule 702(a) now provides,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

8

discretion." *Copeland v. State*, 430 N.E.2d 393, 396 (Ind. Ct. App. 1982). "The qualifications of an expert may be established by practical experience as well as by formal training." *Id*.

As an initial matter, Clark failed to object when Detective Sizemore identified the substance in Clark's pocket as marijuana and so has waived the issue for appellate review. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). "The rule requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured." *Id*.

Waiver notwithstanding, we choose to address the question of whether the State laid a sufficient foundation for the admissibility of both detectives' testimony identifying the substance at issue as marijuana. Detective Fleece testified that over the course of thirteen years he had attended numerous drug schools, had taken a half dozen courses in the visual identification of marijuana, and had been trained to identify marijuana by its packaging. Detective Fleece also testified that he was familiar with the odor of marijuana and that the odor was distinct from oregano, which has a similar appearance. For his part, Detective Sizemore testified that he had attended a class at the Indiana Law Enforcement Academy regarding drug recognition, had been a police officer for seven and one-half years, attended yearly classes in drug recognition, was familiar with the

9

odor of raw marijuana, and had handled raw marijuana. Detective Sizemore also testified that he was familiar with the appearance of marijuana, recognized the odors of raw and burnt marijuana, and had participated in numerous marijuana-related arrests. In summary, both detectives indicated that they had been police officers for several years, had taken numerous classes on drug recognition, and were familiar with both the appearance and odor of marijuana.

We conclude that the trial court did not abuse its discretion in allowing both detectives to offer an opinion on the nature of the substance found on Clark's person. In an analogous context, Indiana appellate courts have held more than once that a person familiar with a particular drug through use may be qualified as an expert to offer an opinion as to whether a certain substance in question is that drug. *See, e.g.*, *Pettit v. State*, 258 Ind. 409, 410-11, 281 N.E.2d 807, 808 (1972) ("We hold that a narcotic addict may be properly qualified by reason of his past experience to give an opinion that a given substance which he has injected into his body contained a narcotic drug with which he has demonstrated familiarity."); *Copeland*, 430 N.E.2d at 396 ("The State demonstrated that Ussery was a drug addict who had taken drugs for over thirteen years. While in prison, Ussery was involved in a drug prevention program where he studied various books and pamphlets. Ussery admitted that he previously used and sold dilaudids. Ussery testified that he had seen dilaudid pills 'probably a million times'. The State demonstrated that Ussery had sufficient lay experience to testify as an expert."). We see no reason not to give at least as much weight to the training and experience one can

receive as a law enforcement officer. The trial court did not abuse its discretion in allowing Detectives Fleece and Sizemore to offer opinions on the identity of the substance seized from Clark's pocket.

Finally, although Clark does not argue that the detectives' testimony is insufficient to establish that the material seized from his person was marijuana, we observe that the Indiana Supreme Court has stated the following in a case involving officer identification of toluene:

> "[T]he identity of a drug can be proven by circumstantial evidence." *Clifton v. State,* 499 N.E.2d 256, 258 (Ind. 1986). The same is true of toluene. The opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence. *Id.* Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound, persons experienced in the area may be able to identify cigarette smoke, marijuana, and even toluene. This is true even if every citizen may not be up to that task.

*Vasquez v. State*, 741 N.E.2d 1214, 1216-17 (Ind. 2001). *See also Boggs v. State*, 928 N.E.2d 855, 865-67 (Ind. Ct. App. 2010) (officer's testimony that based on his training and experience he had "no doubt" that green, leafy substance was marijuana was sufficient to establish identity of drug); *McConnell v. State*, 540 N.E.2d 100, 103-04 (Ind. Ct. App. 1989) ("In our opinion, Officer Lewis's testimony that the substance appeared to be marijuana was sufficient evidence from which the jury could infer that the substance was marijuana[.]").[2]

---

[2] While it is of some concern that the State did not the marijuana analyzed by an expert chemist due to Indiana State Police policy on chemical analysis quantities, it does not appear to preclude conviction under Indiana Supreme Court precedent.

In addition to Detectives Fleece's and Sizemore's testimony, there was other circumstantial evidence supporting a finding that Clark possessed illegal drugs. Very shortly before his apprehension, a known drug dealer approached the vehicle in which Clark was a passenger and appeared to interact with him. Additionally, Clark pushed Detective Fleece and attempted flight immediately after Detective Sizemore announced to Detective Fleece that Clark had "weed." "Flight and related conduct may be considered by a jury in determining a defendant's guilt." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001). "Evidence of flight may be considered as circumstantial evidence of consciousness of guilt." *Brown v. State*, 563 N.E.2d 103, 107 (Ind. 1990). The State produced sufficient evidence to sustain Clark's conviction for marijuana possession.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs in part and concurs in result with opinion.

PYLE, J., concurs with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DONTAE M. CLARK,                                )
                                                )
    Appellant-Defendant,                )
                                                )
        vs.                             )      No. 27A04-1306-CR-269
                                                )
STATE OF INDIANA,                               )
                                                )
    Appellee-Plaintiff.                 )

**Mathias, J., concurring in part and concurring in result.**

I concur with the majority that the admission of the marijuana found on Clark during the pat-down search did not constitute fundamental error. I also concur with the majority that Clark failed to preserve for appeal his argument that the trial court erred in admitting into evidence the testimony of the police that the substance found was marijuana. But I write separately because I believe that it is unnecessary to address Clark's evidentiary argument on the merits.

The majority correctly notes that our supreme court has held that a person sufficiently familiar with an illicit drug may qualify as an expert to offer an opinion regarding whether the substance in question is that drug. Pettit v. State, 258 Ind. 409, 410-11, 281 N.E.2d 807, 808 (1972). I also acknowledge that our supreme court has held

13

that, in the absence of expert testimony based on chemical analysis, the identity of a drug be established by testimony of someone "'sufficiently experienced with the drug" that indicates that the substance at issue was an illicit drug. Halsema v. State, 823 N.E.2d 668, 673 n.1 (Ind. 2005).

In the case of certain substances such as marijuana, which our case law shows has a distinct odor and appearance, I do not doubt that the testimony of someone sufficiently experienced with the drug might prove that the substance was marijuana beyond a reasonable doubt. But I am more concerned when it comes to the identity of chemicals and drugs that are not as readily identifiable. Should a lay witness be allowed to qualify as an expert for purposes of testifying that a white, powdery substance is cocaine, or that a small rock-like crystal is crack cocaine? What about the identity of a pill? Even if such testimony is admissible, I am troubled that such testimony can, by itself, establish the identity of the drug beyond a reasonable doubt.

As noted by the majority, however, Clark does not present a claim regarding the sufficiency of the evidence and instead claims only that the trial court erred in the admission of the testimony regarding the identity of the substance found during the pat-down search. But Clark failed to object to Detective Sizemore's testimony, and therefore failed to preserve this issue for our review. Nor has he established that the admission of this testimony was fundamental error. Therefore, I believe that Clark's failure to object should be the basis of our holding, and I, given my reservations, would choose to address neither the merits of his evidentiary claim nor the sufficiency of the evidence.

14

Accordingly, I fully concur with the majority with regard to the first issue presented by

Clark and I concur in result with regard to the second issue.

# IN THE
# COURT OF APPEALS OF INDIANA

DONTAE M. CLARK,                          )
                                          )
    Appellant-Respondent,             )
                                          )
        vs.                       )    No. 27A04-1306-CR-269
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Petitioner.              )

**PYLE, Judge, concurring**

I concur with the result in my colleagues' decision. However, I believe it is necessary to add an additional thought to footnote 2. In this case, the record reveals that the State sought to obtain a chemical analysis of the seized marijuana so that an expert could more conclusively identify it as such. The State was prevented from obtaining that analysis because Indiana State Police laboratory policy prohibits the testing of marijuana below a certain quantity.

While Indiana Supreme Court precedent allows the State to avoid this roadblock by having a law enforcement officer identify marijuana based upon his or her training and experience, the laboratory's present policy prevents prosecutors, and deprives jurors, from considering expert testimony based on scientific principles used to identify marijuana. This is particularly important because the State is required to prove, beyond

16

a reasonable doubt, that an item alleged to be marijuana actually *is* marijuana. Additionally, jurors are instructed that proof beyond a reasonable doubt means that they be *firmly convinced* that the item is marijuana. When an expert testifies that an item has been examined macroscopically, microscopically, subjected to color tests, thin layer chromatography, and gas chromatography, his or her testimony goes a long way toward identifying an item as marijuana, beyond a reasonable doubt. Thus, increasing public confidence in Indiana's criminal justice system.

The selection of the type of evidence to bring before a jury should, as much as possible, be unconstrained by administrative decisions, and jurors should be able to assume that the State endeavored to bring its best case to trial. There is likely a rational reason behind the laboratory's policy, but this type of administrative decision impacts prosecutors, defense counsel, judges, jurors, and defendants. For these reasons, I would respectfully submit that the laboratory's policy decision be reconsidered by our colleagues in the executive branch.